IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Joe Hand Promotions, Inc., | ) | C/A No. 4:10-801-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Jimmagan's Inlet, Inc., d/b/a/ Little | ) | |
| River Par 5 Sports Bar (f/k/a Varsity | ) | |
| Sports Bar); and Steve J. Sheedy, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Joe Hand Promotions, Inc. ("JHP" or "Plaintiff"), which had exclusive, nationwide commercial television distribution rights to *Ultimate Fighting Championship 71: Chuck Liddell v. Quinton Jackson* ("the Program"), sued Defendants Jimmagan's Inlet, Inc., d/b/a/ Little River Par 5 Sports Bar (f/k/a Varsity Sports Bar) ("Jimmagan's"), and its principal, Steve J. Sheedy ("Sheedy") (collectively "Defendants") for exhibiting the May 26, 2007 commercial broadcast of the Program, which included under-card bouts and commentary, without paying the required licensing fee to JHP. Compl. ¶¶ 10–13. JHP's Complaint included causes of action brought pursuant to 47 U.S.C. § 605 ("Communications Act") and 47 U.S.C. § 553 ("Cable & Television Consumer Protection and Competition Act"), as well as a state law claim for conversion. Compl. ¶¶ 9–27. Although Defendants were served with JHP's Complaint, they have not answered or filed any responsive pleading. Pursuant to JHP's request, the Clerk of Court entered default against Defendants on May 7, 2010. [Entry #8 and #9]. JHP then moved for a default

judgment and award of attorneys' fees and other costs. [Entry #10]. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Honorable Terry L. Wooten referred the default judgment motion to the undersigned for a hearing and a Report and Recommendation ("Report"). [Entry #15]. The court conducted a hearing on September 15, 2010 at which only JHP appeared. The court took the matter under advisement at the hearing and presents this Report for the court's consideration.

I.      Introduction

JHP filed this action against Defendants on March 31, 2010, seeking an award of statutory damages, enhanced damages, attorneys' fees, and costs based on the unlicensed broadcast of the Program. Compl. ¶¶ 9–27 and Prayer for Relief.

A.      Jurisdiction and Venue

The court has subject matter jurisdiction over JHP's claims pursuant to 28 U.S.C. §§ 1331 and 1367. *See* Compl. ¶¶ 1–2. The court has personal jurisdiction over Jimmagan's and Sheedy, and venue in this District is proper pursuant to 28 U.S.C. § 1391 because Sheedy is a South Carolina resident, Jimmagan's conducts business in this District, and because a substantial part of the alleged wrongful acts occurred in this District. Compl. ¶¶ 3, 6–7.

B.      Process and Service

On April 7, 2010, JHP's private process server served Jimmagan's by personally serving JHP's registered agent, James F. Sheedy, Sr., at his place of business, 6003 North Kings Highway, Myrtle Beach, South Carolina. [Entry #5 and #5-1]. On April 13, 2010,

JHP's process server served defendant Steve J. Sheedy personally at his place of business, 6003 North Kings Highway, Myrtle Beach, South Carolina. [Entry #5 and #5-2].

C.     Grounds for Entry of Default

Neither Jimmagan's nor Sheedy timely filed an answer or other pleading. *See* Aff. of Default [Entry #8-1]; Aff. of JHP Counsel Leonard R. Jordan, Jr. in Supp. of Entry of Default ["Jordan Aff.," Entry #8-2]. On May 6, 2010, JHP filed its Request for Entry of Default as to Jimmagan's and Sheedy, which it served on both Jimmagan's and Sheedy by mail. [Entry #8 and #8-3]. The Clerk of Court properly entered default as to Jimmagan's and Sheedy on May 7, 2010, pursuant to Fed. R. Civ. P. 55(a). [Entry #9].

On June 14, 2010, JHP filed a Motion for Default Judgment as to both Defendants, which it served on them by mail. [Entry #10 and #10-9]. On August 23, 2010, the court noticed a September 15, 2010 hearing on the Motion for Default Judgment, and sent the notice to Defendants by certified and regular mail. On September 20, 2010, the notices sent to Defendants by certified mail were returned as undeliverable. [Entry #17 and #17-1]. The regular mail notices were not returned.

II.     Findings of Fact

Having reviewed JHP's Complaint, Answers to Local Rule 26.01 Interrogatories, Request for Entry of Default, Motion for Default Judgment, as well as all supporting and supplemental information provided, the undersigned accepts JHP's well-pleaded factual allegations as true and makes the following factual findings. *See DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.1 (4th Cir. 2009) (accepting plaintiff's allegations against

defaulting defendant as true, noting a defaulting "'admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (*quoting Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

JHP is a Pennsylvania corporation with its principal place of business in Pennsylvania. Compl. ¶ 5. Jimmagan's is a South Carolina corporation which does business as Little River Par 5 Sports Bar (formerly known as Varsity Sports Bar) at 1537 Highway 17 North, Little River, South Carolina. *Id.* ¶ 6. Sheedy, Jimmagan's principal, resides in South Carolina. *Id.* ¶ 7. Relevant to this litigation, JHP paid for, and was granted, the exclusive, nationwide commercial television distribution rights to the Program. *Id.* ¶ 10. JHP contracted with and granted certain businesses the rights to publicly exhibit the Program to their customers within their commercial establishments. *Id.* ¶ 11. JHP expended substantial money in marketing, advertising, administering, and transmitting the Program to the businesses. *Id.* ¶ 12.

## III.  Analysis

Having found the facts as set forth in JHP's Complaint deemed admitted by default, the court must ensure the Complaint sets forth claims under the 47 U.S.C. § 605 before entering default judgment. *See generally GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (considering facts and evaluating plaintiff's claims prior to entry of default judgment in copyright action). The

court considers whether JHP has set forth claims for which relief can be granted pursuant to the standard of F.R. Civ. P. 12(b)(6).

A.     Election of Remedies

In its Motion for Default Judgment, JPS submits that it has established liability pursuant to 47 U.S.C. § 605 and 47 U.S.C. § 553. Because the two statutory schemes provide relief for the alternate means by which the Program might have been received—satellite or cable—JHP elected to proceed under 47 U.S.C. § 605, and thereby waived any right to recover under 47 U.S.C. § 553. Pl.'s Mot. for Default J. at 3 [Entry #10-1]. *See Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd.,* 3:10-199-CMC, 2010 WL 3420189, *2 & n.2 (D.S.C. Aug. 23, 2010) (acknowledging propriety of plaintiff's electing between the two statutory schemes based on mode of transmission of programming).

In electing to pursue damages pursuant to 47 U.S.C. § 605, JHP concedes the split in authority as to the applicability of this section to pirated programming involving cable services—as opposed to satellite services—at the delivery point. Pl.'s Mot. at 3. The Fourth Circuit has not addressed this specific issue and at least one court in this District has adopted the Seventh Circuit's position in *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996), finding that 47 U.S.C. § 553, not 47 U.S.C. § 605, applied to the theft of cable services at the point of delivery. *Columbia Cable TV Co., Inc. v. McCary*, 954 F. Supp. 124 (D.S.C. 1996). JHP submits that, without the benefit of discovery or an admission by Defendants, it is impossible to determine whether the Program was broadcast by cable or

satellite signal. Pl.'s Mot. at 4. A higher range of damages is available in 47 U.S.C. § 605 than in 47 U.S.C. § 553. Statutory damages under 47 U.S.C. § 605 range from $1,000 to $10,000 and a $100,000 maximum enhancement for willfulness; statutory damages under 47 U.S.C. § 553 range from $250 to $10,000 for all violations and a maximum $50,000 enhancement for willfulness. 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii); 47 U.S.C. §§ 553(c)(3)(A)(ii), 553(c)(3)(B).

The court recognizes that 47 U.S.C. § 605 would be inapplicable if the delivery were by cable. However, given the default, JHP cannot conduct discovery to determine the mode of transmission. JHP has elected to pursue damages under 47 U.S.C. § 605. In any event, in light of the recommended damages, the distinction is without a difference in this case. *Cf. Columbia Cable*, 954 F. Supp. at 128 (noting that, even if 47 U.S.C. § 605 were applicable to cable theft, under facts of case, court would award damages "as close as permissible to the amount awarded under § 553").

In its Motion for Default Judgment, JHP pursues damages under both 47 U.S.C. § 605 and its common law claim for conversion. Pl.'s Mot. at 12. At the hearing, the court indicated that JHP would need to elect its remedy, either before or after a damages order issued. At the hearing, JHP counsel elected to pursue damages permitted under 47 U.S.C. § 605 and not to further pursue its conversion claim. As such, the remainder of this Report focuses only on JHP's claim and damages pursued under 47 U.S.C. § 605.

B.    Liability under 47 U.S.C. § 605

The Communications Act prohibits the unauthorized reception, interception, publication, or divulgence of interstate radio or wire communications. *See* 47 U.S.C. § 605(a).  Specifically, it provides, in pertinent part, that:

> no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof [] to [] any person other than the addressee, his agent or attorney[.]

47 U.S.C. § 605(a). In short, JHP must demonstrate that Defendants intercepted the Program's signals and "divulged," or aired it to commercial patrons.

JHP submitted proof through the affidavit of a private investigator who viewed the Program at Jimmagan's. *See* Aff. of Jeff Spivak ["Investigator Aff.," Entry #10-4]. The Investigator Affidavit provides evidence that the Program was displayed on thirty televisions at Jimmagan's and provides details of the portion of the Program he saw. Investigator Aff. at 1 (noting names and attire of fight participants, announcer's name, outcome of the bout, a description of the server, the number of televisions, and other distinguishing features of the establishment). JHP having established that Defendants violated 47 U.S.C. § 605(a), the undersigned recommends that judgment be entered in JHP's favor as to its claim thereunder.

C.     Damages under 47 U.S.C. § 605

The available penalties and remedies for violation of 47 U.S.C. § 605(a) include a

private civil action, as follows:

(B) The court–

> (i) may grant temporary and final injunctions on such terms as it may
> deem reasonable to prevent or restrain violations of subsection (a) of
> this section;
> (ii) may award damages as described in subparagraph (C); and
> (iii) shall direct the recovery of full costs, including awarding reasonable
> attorneys' fees to an aggrieved party who prevails.

47 U.S.C. § 605(e)(3)(B). JHP seeks damages, attorneys' fees, and costs.

1.     Statutory Damages under 47 U.S.C. § 605

The statute sets out the following available damages:

(C)(i)  Damages awarded by any court under this section shall be computed,
at the election of the aggrieved party, in accordance with either of the
following subclauses;

> (I) the party aggrieved may recover the actual damages suffered by
> him as a result of the violation and any profits of the violator that are
> attributable to the violation which are not taken into account in
> computing the actual damages; in determining the violator's profits,
> the party aggrieved shall be required to prove only the violator's
> gross revenue, and the violator shall be required to prove his
> deductible expenses and the elements of profit attributable to factors
> other than the violation; or

> (II) the party aggrieved may recover an award of statutory damages
> for each violation of subsection (a) of this section involved in the
> action in a sum of not less than $1,000 or more than $10,000, as the
> court considers just, and for each violation of paragraph (4) of this
> subsection involved in the action an aggrieved party may recover
> statutory damages in a sum not less than $10,000, or more than
> $100,000, as the court considers just.

(ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C. § 605(e)(3)(C).

JHP elects to recover statutory damages available under 47 U.S.C. § 605(e)(3)(C)(i)(II), rather than actual damages available under 47 U.S.C. § 605(e)(3)(C)(i)(I). As JHP points out, statutory damages are appropriate when actual damages are difficult to prove. Because of Defendants' default, JHP has not been able to conduct discovery concerning the Defendants' profits from the broadcast of the Program. JHP seeks $10,000 in statutory damages, which is the maximum available pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). JHP argues for the maximum recoverable statutory damages for the deterrent effect it may have in minimizing such future conduct.

Jimmagan's has the capacity for 125 people. Investigator Aff. at 2. The Investigator counted the number of patrons three times and found there were 42 patrons during one count and 47 during the other two counts. *Id.* JHP provided evidence that the licensing fee for Defendants to have legally broadcast the Program would have been $975. *See* Pl.'s Aff. in Support of Mot. for Default J. ¶ 8 & exh. 1 [Entry #10-3] (rate card showing cost of licensing as $975 for establishments with capacity from 101 to 150).

The court may award statutory damages between $1,000 to $10,000 in an amount "the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation. *See Joe Hand Promotions, Inc. v. Precint Bar-Daxlam, Ltd.*, 3:10-199-CMC, 2010 WL 3420189 (D.S.C. Aug. 23, 2010) (noting consideration of licensing fee "and the multiple and net amount necessary to ensure a deterrent effect"); *J&J Sports Prods., Inc. v. JR'z Neighborhood Sports Grille, Inc.*, 2:09-3141-DCN, 2010 WL 1838432 (D.S.C. April 5, 2010) (noting various methods of calculating statutory damages). The Fourth Circuit has not addressed any of these methods.

The undersigned recommends a statutory damages award of $5,000. Under the facts and circumstances here, the undersigned believes that an award of approximately five times the license fee Defendants should have paid to legally broadcast the Program, when combined with enhanced damages and attorneys' fees discussed below, is a sufficient deterrent.

2. Enhancement of Statutory Damages under 47 U.S.C. § 605.

JHP claims that the Defendants willfully violated 47 U.S.C. § 605(a) for financial gain and seeks enhanced damages of $100,000. *See* Pl.'s Mot. at 5; *see also* Compl. ¶ 14 (averring Jimmagan's and Sheedy intentionally intercepted and showed the Program for financial gain or commercial advantage); Compl. ¶ 8 (alleging Sheedy directly or indirectly committed wrongful acts and "cannot hide behind Jimmagan's corporate shield"). The statute permits the court, in its discretion, to increase damages by up to $100,000 per violation when violation "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition to JHP's pleadings regarding Defendants' intentional acts, it presented evidence that the Program could not have been "mistakenly, innocently or accidentally intercepted." Aff. of JHP's President Joe Hand, Jr. ¶ 9 ("Hand Aff.") [Entry #10-3].

The court recommends a finding that Defendants' violations were intentional and recommends enhanced damages of $10,000 (in addition to the $5,000 award discussed above and the award of fees and costs discussed below). This recommendation is based on the evidence JHP presented in addition to evidence of injury in the amount Defendants would have paid to properly license the Program. Specifically, JHP presented evidence of its indirect injuries, including lost revenue and the detriment to its paying customers who must subsidize the company's anti-piracy efforts.

JHP requested the statutory maximum of $100,000 in enhanced damages. Although the court agrees that more than nominal damages should be awarded to deter future violations, the court does not recommend a higher award based on the absence of evidence of factors that courts find justify a larger award. For example, there is no evidence that Jimmagan's charged a cover, advertised the event, or obtained substantial revenue from broadcasting the Program. *See generally Kingvision Pay-Per-View, Ltd. v. Guiterrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (listing factors that courts consider in awarding enhanced damages).

D.     Attorneys' Fees and Costs under 47 U.S.C. § 605

The Communications Act requires that the court award "full costs, including reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As rightful owner of the Program broadcast rights, JHP is an aggrieved party that has prevailed.

1.     Request for Costs

Prior to the September 15, 2010 hearing, JHP submitted affidavits of its South Carolina counsel, Jordan; and its California counsel, Thomas P. Riley, in support of its request to recover $1,150 in costs. *See* Decl. of Leonard R. Jordan, Jr. Regarding Attorney's Fees and Costs ["Jordan Decl."], ¶ 5 [Entry #10-6]; Supplemental Decl. of Leonard R. Jordan, Jr. Regarding Attorney's Fees and Costs ["Jordan Suppl. Decl."], ¶ 5 [Entry #14]; Supplemental Decl. of Pl.'s Counsel Regarding Attorneys' Fees and Costs ["Riley Suppl. Decl."] ¶¶ 4, 5, 11 [Entry #14-2]. JHP seeks recovery of the statutory

filing fee, photocopying and postage charges, service-of-process fees, and investigative costs. *See* Riley Suppl. Decl. ¶¶ 3–5, 11; Jordan Decl. ¶ 5; Jordan Suppl. Decl. ¶ 5.

The undersigned is not aware of cases in the Fourth Circuit or courts in this District that have discussed what "full costs" are to be awarded a prevailing party pursuant to 47 U.S.C. § 605(e). In *Kingsvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59 (E.D.N.Y. 2006), the court considered the legislative history and determined that "full costs" included more than those costs taxable under 28 U.S.C. § 1920, the general statute setting out limited taxable costs. *See id.* at 65–67.

Based on the legislative history and the statute's mandatory award of "full costs," the undersigned finds it appropriate to award the type of costs requested, so long as these costs are adequately explained and supported. Award of the $350 statutory filing fee and the $59.76 in costs for photocopies and postage is appropriate in this matter. JHP has provided sufficient documentation and explanation of these requested costs and the undersigned recommends they be awarded.

Regarding the remaining requested fees for service of process and appropriate investigative fees, the undersigned finds that they may be awarded pursuant to 47 U.S.C. § 605(e). *See Autar*, 426 F. Supp. 2d at 65–67. However, JHP has not provided adequate support for the full amounts of those costs requested.

JHP's South Carolina counsel sets forth the cost of service of the Summons and Complaint on defendants as totaling $240.24. Jordan Decl. ¶ 5(b). Although the Jordan Declaration indicates the invoices supporting the request for $240.24 in service fees are

attached, the Declaration filed with the court contains no such attachments. *See* Jordan Decl. ¶ 5(b). However, the affidavits of service of process on both Jimmagan's and Sheedy are in the record and indicate that the process server charged a total of $76.09 for service on Jimmagan's and $111.24 for service on Sheedy. *See* Affs. of Personal Service [Entry #5-1, #5-2]. This record information combines for a total of $187.43 in expenses for service of process. Although the court has no reason to question the $240.24 requested, only $187.43 is supported in the record.

Additionally, JHP's California counsel seeks recovery of $100 it advanced to South Carolina counsel's law firm "to identify and serve initiating suit papers" upon Defendants. Riley Suppl. Decl. ¶¶ 4, 11. However, the Declarations do not make it clear whether this $100 is subsumed by the amount South Carolina counsel seeks for the service of process fees. Without more detailed information, the undersigned does not find the $100 requested to be supported by the record and does not recommend it be included in an award of costs without further explanation.

Accordingly, the undersigned recommends an award of $187.43 in costs for service of process. Should JHP further document the full amount requested in any objections to this Report, the district court may choose to make its independent determination regarding whether a different amount should be included in any default judgment.

Similarly, on this record, the undersigned cannot recommend award of the amount JHP seeks $500 in investigative costs. The *Autar* court specifically found investigative

costs could be recovered under 47 U.S.C. § 605(e). 426 F. Supp. 2d at 67 (noting Senate Committee's intent that full costs include "reasonable investigative fees (related to the action brought) of an aggrieved party.") (internal quotation and citation omitted)). However, that court also found it was not required to award such fees and that an award requires the prevailing party to appropriately show that the fees sought were reasonable (i.e., the investigator's billing rate, time, and qualifications). *Autar*, 426 F. Supp. 2d at 67. Plaintiff having failed to so document the investigator fees, the *Autar* court denied the same. *Id.* at 67–68.

In this case, JHP has provided no detail regarding the $500 in investigative fees sought. The undersigned concurs with the *Autar* court that fees for necessary investigative services may be awarded, but that the fees must be supported with specific information about the time the investigator spent on the matter, his hourly rate, and his qualifications to charge such fees. Without this supporting information, the undersigned is constrained to recommend denial of this portion of JHP's request for costs. Should JHP provide sufficient detail in any objections to this Report, the district court may choose to consider that detail and make its independent determination regarding whether investigative costs should be included in any default judgment.

In sum, the undersigned recommends $597.19 be awarded in costs as follows: $350 filing fee; $59.76 for photocopies and postage; $187.43 for service of process.

2.    Request for Attorneys' Fees

The "full costs" to be awarded to a prevailing party pursuant to 47 U.S.C. § 605(e) includes "reasonable attorneys' fees." In support of its request for attorneys' fees, JHP submits the following: the Supplemental Riley Declaration [Entry #14-2], in which Riley documents that JHP has incurred $628.13 in attorneys' fees from his firm; the June 14, 2010 Jordan Declaration, which includes $1,180 in legal fees from Jordan as of June 14, 2010; and the September 3, 2010 Supplemental Jordan Declaration in which Jordan submitted an additional $900 in fees either incurred or expected to be incurred before, during, and after the hearing in this matter. *See* Riley Suppl. Decl. ¶¶ 8–10, 12 [Entry #14-2]; Jordan Decl. ¶ 4 [Entry #10-6]; Jordan Suppl. Decl. ¶¶ 2, 3 [Entry #14]. In response to the court's inquiry regarding Jordan's projected additional fees, he indicated the projected two hours to attend the damages hearing had been incurred. He noted that he had also projected one additional hour to prepare a proposed order. Because the court did not ask for a proposed order, Mr. Jordan indicated that $200 of the additional $900 requested was withdrawn. Accordingly, JHP seeks a total of $2508.13 in attorneys' fees, comprised of $628.13 charged by Riley and his firm and $1880 charged by Jordan and his firm.

In this default matter, no one has appeared to challenge the fees JHP seeks. Nonetheless, in determining what constitutes a reasonable number of hours and the appropriate hourly rates (i.e., in calculating the lodestar fee), the court must consider the following factors: (1) the time and labor expended; (2) the novelty and difficulty of the

questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *Jackson v. Estelle's Place, LLC*, No. 09-1700, 2010 WL 3190697, *4 (4th Cir. Aug. 12, 2010). Although the court must consider all twelve of the factors, the court is not required to rigidly apply these factors, as not all may affect the fee in a given case. "[T]hese factors should be considered in determining the reasonable rate and the reasonable hours, which are then multiplied to determine the lodestar figure which will normally reflect a reasonable fee." *E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 965 (4th Cir. 1990). In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (*quoting Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Further, this court's Local Rule 54.02(A) provides that attorneys' fee petitions must comply with *Barber* "and shall state any exceptional circumstances and the ability of the party to pay the fee." Local Rule 54.02(A) (D.S.C.).

With these factors in mind, the court considers the statements of attorneys' fees, beginning with the Riley Supplemental Declaration. Riley's Supplemental Declaration requests fees for 3.7 hours of work by three professionals—Riley, a paralegal, and an administrative assistant—and sets out the hourly rates for each of them, as follows:

| Timekeeper | Hourly Rate | Amount of Time (Hours) | Amount ($) |
|---|---|---|---|
| Thomas Riley | $400 | 0.975 | $ 390 |
| Admin. Assistant | $75 | 1.375 | $ 103.13 |
| Paralegal | $100 | 1.350 | $ 135 |
| Total | | 3.700 | $1,009.76 |

Riley Suppl. Decl. ¶ 12 [Entry #14-2]. Riley provides details of the work performed, time for each task, and by whom it was performed. *Id.* ¶ 10. He indicates his firm's expertise in these matters and indicates the billable hours submitted were reconstructed by a thorough review of the case file that is informed by experience in these matters. *Id.* ¶ 9. He indicates the rates charged are "well within the guidelines of the prevailing market rates within Los Angeles County and the United States." *Id.*

Although Riley does not expressly discuss the *Barber* factors, the court finds that his Supplemental Declaration appropriately addresses some of the same considerations. In light of all information provided and known to the court, the undersigned submits that the 3.7 hours billed and explained in Riley's Supplemental Declaration are reasonable.[1]

---

[1]In recommending the time billed by administrative personnel at the Riley firm be included in the fees charged to Defendants, the court is mindful that courts have interpreted other cost-shifting statutes, including 42 U.S.C. § 1988, as not including fees for administrative work. *See generally Missouri v. Jenkins,* 491 U.S. 274, 288 n.10 (1989) (discussing billing of clerical and other tasks under 42 U.S.C. § 1988). The court has found no authority considering the issue under 47 U.S.C. § 605. Given the relatively small amount of the administrative time (1.375 hours at $75/hour for total of $103.13),

In support of Riley's assertion that the rates charged are within guidelines of those charged in "Los Angeles County and the United States," he references an attached exhibit. Riley Suppl. Decl. ¶ 9. However, the filed documents do not include such an exhibit. In a footnote to the reference to the supposed exhibit, Riley indicates the attachment is the "Laffey Matrix," that is used by one of the three federal judicial districts in California. *See id.* at page 5, n.i. Even if that California-based matrix had been submitted, it could not satisfy the requirement that one seeking attorneys' fees must establish those fees to be comparable to customary fees for like work in the relevant market of South Carolina or the reasonableness of the rates requested. *See generally Grissom v. Mills Corp.*, 549 F.3d 313, 323 (4th Cir. 2008) (reversing fee award, in part because "Plaintiff offered no specific evidence that the hourly rates sought for his attorneys coincided with the then prevailing market rates of attorneys in the [district] of similar skill and for similar work, which our case law required him to do." ); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.").

Without specific support for the requested rates, the court cannot appropriately conduct the required analysis of the reasonableness of hourly rates requested.

---

coupled with the legislative intent that those aggrieved by violations of 47 U.S.C. § 605 be fully compensated, the court will assume, but not decide, that administrative time may be included in a 47 U.S.C. § 605(e) fee award. This assumption is specifically limited to the facts of this case and is not intended to be a precedent-setting ruling.

Nonetheless, the court may drawn on its own knowledge of litigation rates often charged in this District. *See Joe Hand Promotions, Inc. v. The Precint Bar-Daxlam, Ltd.*, 2010 WL 3420189 (finding requested fees to be reasonable based on court's "own knowledge of rates charged in litigation in this court" for "similar work in this geographic area[,]" while admonishing counsel to comply with the requirements of *Grissom* and *Plyler* in any future fee petitions). The undersigned recently considered fee applications and found $200/per hour to be an appropriate rate for counsel defending a motion to compel that did not require specialized skill that potentially could justify the higher rate requested by out-of-state attorneys. *See City of Myrtle Beach v. United Nat'l Life Ins.*, 4:08-1183-TLW-SVH, Entry #91 at 24–25 (D.S.C. Aug. 27, 2010).

In this case, the court does not have documentation to support a market rate higher than $200/hour, nor does it have independent knowledge of recent higher fees charged in this geographic area for matters similar to this one. Accordingly, the court recommends that the fees requested in the Riley Supplemental Declaration for Riley be reduced from $400/hour to $200/hour. By the court's calculations, this would reduce the fee award for fees submitted by the Riley firm to $433.31. In the event that, during the period within which it may file objections to this Report, JHP's California counsel complies with the *Grissom* and *Plyler* requirements, the district court may wish to award a different amount of fees).

The court now considers the fee applications submitted by Jordan. Jordan Decl., Jordan Suppl. Decl. [Entry #10-6, #14]. In his initial Declaration, he details the work he

performed, the time spent, and the amount of fees at his customary $200/hour rate. *See* Jordan Decl. ¶ 4 (submitting total 5.75 hours at $200/hour for requested $1,180 fee). Jordan later provided additional documentation for work performed for JHP in this matter and estimated the time he would spend representing JHP at the hearing. Jordan Suppl. Decl. ¶¶ 2, 3 [Entry #14]. At the hearing, Jordan indicated that $200 of the additional $900 requested was withdrawn, making his additional fees requested $700. In support of his request for fees incurred representing JHP in this matter, Jordan also submits an affidavit of Theodore von Keller, Esq. Aff. in Support of Decl. Seeking an Award of Attorney's Fees to Pl. ["von Keller Aff.," Entry #14-1]. Mr. von Keller indicates that he practices law in this District, has handled matters similar to this one, and has reviewed the fee application Jordan submitted to the court. *Id.* ¶¶ 2, 4. He further indicates that he believes the work performed appropriate in a case of this nature and that, knowing Jordan and the customary prevailing rates for this type work, he considers the $200/hour rate appropriate. *Id.* ¶¶ 4, 5.

The information Jordan provided, coupled with the court's knowledge of rates in work of this type in this District, supports the $1,880 fees submitted on behalf of JHP.

Based on the information and supporting documents before the court at this time, the undersigned recommends that judgment against JHP and Sheedy include the award of $2,323.31 ($433.31 plus $1,880) in attorneys' fees.

IV.    Recommendation

The undersigned recommends default judgment be entered against Defendants and that they be found liable for willful violation of 47 U.S.C. § 605. As a result of such violation, JHP should be awarded judgment against Jimmagan's and Sheedy, which should include the award of $597.19 in costs and $2,323.31 in attorneys' fees pursuant to 47 U.S.C. § 495(e)(3)(B)(iii) and $15,000 in statutory and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C). Thus, the total recommended monetary award is $17,920.50 ($15,000 damages, plus $2920.50 costs and fees), barring supplementation by counsel. Defendants Jimmagan's and Sheedy should be found jointly and severally responsible for these damages awards.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to Jimmagan's and Sheedy at their last known addresses.

IT IS SO RECOMMENDED.

October 1, 2010                              Shiva V. Hodges
Florence, South Carolina                     United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**